United States Court of Appeals,

Eleventh Circuit.

No. 95-3058.

SOUTHERN SOLVENTS, INCORPORATED, Plaintiff-Appellant,

v.

NEW HAMPSHIRE INSURANCE COMPANY; Granite State Insurance Company, Employers National Insurance Corporation, Defendants,

Canal Insurance Company, Defendant-Appellee.

Aug. 12, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-533-Civ-T-24E), Susan C. Bucklew, Judge.

Before CARNES, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

PER CURIAM:

Southern Solvents appeals the order of the District Court granting Canal Insurance Company's motion for summary judgment. 894 F.Supp. 430. We VACATE the order of the District Court and REMAND.

I. STATEMENT OF THE CASE

Prior to 1986, Southern Solvents, Incorporated (Southern) operated a tetrachloroethylene ("PERC") distribution facility in Tampa, Florida. PERC is a solvent used in the dry cleaning industry. The PERC was held in storage tanks at Southern's Tampa site and transported in 1,000 gallon tankers to retail dry cleaners in the Central Florida area. 4,000 gallon tankers were also used to transport PERC from Southern's PERC manufacturers to other

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

wholesale PERC distributors. Operations at the Tampa site were discontinued sometime between 1984 and 1986.

At some time during the summer or fall of 1988, PJ Stubbs, Southern's lessee at the Tampa site, notified Southern that the Hillsborough County Health Department had found large levels of PERC contamination in the site's groundwater. Southern hired an environmental engineering company to test for contamination. Tests coupled with a review of records and further investigation revealed that four PERC releases had occurred at the site: in August or September 1978, on April 29, 1982, in Summer 1982, and on July 16, 1983. Southern entered into a consent order with the Florida Department of Environmental Regulation in August, 1989.

During its operations, Southern held comprehensive general liability ("CGL") insurance under New Hampshire Insurance Company and Granite State Insurance Company ("the AIG Companies"), and occurrence-based umbrella liability insurance under Canal Insurance Company ("Canal"), Employers National Insurance Company ("Employers"), and South American Insurance Company ("South American"). Both Employers and South American are in receivership.

Southern notified the AIG Companies of the environmental situation on March 15, 1989, Employers on April 29, 1992, and Canal on or before June 30, 1992. All carriers refused to defend or indemnify Southern. Southern then initiated a breach of contract and declaratory judgment action against the AIG companies, Canal and Employers.

Mediation was held and Defendants New Hampshire, Granite State, and Employers settled and were dismissed. Defendant-

Appellee Canal moved for summary judgment alleging: 1) the contamination was not "sudden and accidental" within the meaning of the policy, 2) the insured did not give notice as soon as practicable, 3) the insured made misrepresentations in the application for insurance voiding the policy, and 4) the insured breached the cooperation clause thus forfeiting coverage.

Although the District Court found that the initial discharges were "sudden and accidental" within the meaning of the exception to the pollution exclusion clause of the policy, it nevertheless found that the resulting leaching has been continuous ever since the initial discharge. The court stated that "[t]o rule that such continuous pollution is "sudden and accidental' thwarts the policy goals behind the exclusion." In granting Defendant-Appellee's motion for summary judgment based on the "sudden and accidental" argument, the District Court held that the public policy underlying the pollution exclusion barred coverage. The court denied Canal's other three arguments as moot. Final judgment was entered in favor of Canal. Southern now appeals from the order of the District Court.

## II. STANDARD OF REVIEW

Summary judgment is proper in cases in which there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). We review the District Court's grant of summary judgment *de novo,* applying the same legal standards that bound the District Court. We must view all of the evidence in the light most favorable to the non-moving party. *Samples ex. rel. Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The movant bears the initial burden of presenting

evidence sufficient to demonstrate the absence of a genuine issue of material fact. *Celotex Co. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the movant has met its burden, the non-movant must then designate, by affidavits, depositions, admissions, and answers to interrogatories, specific facts showing the existence of a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593-94 (11th Cir.1995).

### III. ANALYSIS

Appellant contends that the District Court erred in granting appellee's motion for summary judgment even though the court found that the four identified PERC releases were "sudden and accidental" within the meaning of the policy's pollution exclusion clause.

This "occurrence-based" policy defines the term "occurrence as:

> an accident which takes place during the policy period, or that portion within the policy period of a continuous or repeated exposure to conditions, which causes personal injury, property damage ... neither expected nor intended by the insured.

The policy's pollution exclusion clause provides:

> It is agreed that this policy does not apply to ... property damage arising out of the discharge, dispersal, release or escape of smoke, vapors ... toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land ...; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

R-1 (Exhibit E) (emphasis added).

Upon reviewing the evidence in the light most favorable to Southern as the non-movant, the District Court found that the four PERC discharges were separate and distinct events which were not the result of day-to-day operations and that therefore, the

discharges were "sudden and accidental" for summary judgment purposes.

However, the District Court found that coverage was nevertheless barred because the leaching that resulted from the initial discharges was continuous as opposed to "sudden and accidental."[1]  Our reading of Florida law, specifically *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Corp.,* 636 So.2d 700 (Fla.1993), leads us to conclude that the District Court erred in this respect.  Under Florida law, the *discharge* must be sudden and accidental, not the resulting environmental damage.

In *Dimmitt,* the Supreme Court construed a policy containing a similar pollution exclusion clause to mean that:

> (1) basic coverage arises from the occurrence of unintended damages, but (2) such damages as arise from discharge of various pollutants are excluded from the basic coverage, except that (3) damages arising from the discharge of these pollutants will fall within the coverage of the policy where such *discharge* is sudden and accidental.

*Dimmitt,* 636 So.2d at 705 (emphasis added); *see also St. Paul Fire and Marine Insurance v. Warwick Dyeing,* 26 F.3d 1195, 1203 (1st Cir.1994) (pollution exclusion plainly refers to the discharge and not to the environmental damages themselves); *Hartford Accident & Indemnity Co. v. United States Fidelity & Guaranty Co.,* 962 F.2d

---

[1]The District Court reasoned that based on public policy concerns of vigilance the discharges at issue were not covered by the contract issued by Canal.  However, "federalism proscribes unwarranted federal judicial meddling in state matters because such interference would "prevent the informed evolution of state policy by state tribunals.' "  *Moore v. Sims,* 442 U.S. 415, 429-30, 99 S.Ct. 2371, 2380-81, 60 L.Ed.2d 994 (1979).  Therefore, "[federal courts are] not an appropriate forum for pronouncing [a state's] public policy where the state constitution, statutes or judicial opinions give no clear indication that such policy is "well defined and dominant.' "  *American Home Assurance Company v. Stone,* 61 F.3d 1321, 1329 (7th Cir.1995) (citations omitted).

1484, 1491 (10th Cir.1992) (the discharge must be sudden and accidental to qualify for coverage, not the pollution damage). Based on the holding in *Dimmitt* and the unambiguous terms in the policy issued by Canal it is clear that it is the actual discharge, not the resulting damages or contamination, which must be sudden and accidental in order to fall within the exception to the pollution exclusion clause.

The trial court did not address Canal's contentions that it was entitled to summary judgment based on the insured's: (1) failure to give notice as soon as practicable, (2) misrepresentations in the application which void the policy, and (3) breach of the cooperation clause thus voiding coverage. We leave these issues open upon remand.

### IV. CONCLUSION

We VACATE the District Court's order granting summary judgment and REMAND for proceedings in accordance with this opinion.