Terry L. COZZIE, Plaintiff–Appellant,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 97–1983.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1997.

Decided April 9, 1998.

Russell W. Hartigan, James P. Newman (argued), Chicago, IL, for Plaintiff–Appellant.

Amy K. Posner (argued), Donald J. Harman, Metropolitan Life Insurance Company, Law Department, New York City, for Defendant–Appellee.

Before FLAUM, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Terry L. Cozzie initially filed suit in Illinois Circuit Court in Cook County. She alleged that she was wrongfully denied life insurance benefits as the named beneficiary of a life insurance policy issued by Metropolitan Life Insurance Company ("MetLife"). MetLife removed the action to the district court on the ground that the insurance plan is governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. The parties submitted a statement of undisputed facts and, upon cross-motions for summary judgment, the district court decided in favor of MetLife. Ms. Cozzie now appeals. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

Ms. Cozzie's husband, Robert J. Cozzie, was employed by Ameritech and participated in the Ameritech Life Insurance Program, an employee welfare benefit plan. That plan was a product of collective bargaining between Ameritech and the unions representing its employees. On November 6, 1994, Mr. Cozzie was killed in a car accident. According to investigators, Mr. Cozzie's vehicle was found overturned in a field, where it had come to rest, after missing a curve in the road, striking an embankment and rolling over three times. Mr. Cozzie had a blood alcohol level of .252%. This amount is more

than 2+ times the legal limit under Illinois law at the time of the incident.[1] The cause of death stated in the coroner's report was asphyxiation as a result of the car's resting on Mr. Cozzie. There were no witnesses to the accident and no apparent cause of the accident other than Mr. Cozzie's impaired condition.

Ms. Cozzie, as the named beneficiary of the life insurance policy, received $42,000 in basic life insurance benefits. However, MetLife, as the claim fiduciary under the plan, denied Ms. Cozzie's request for an additional $42,000 under the Accidental Death and Dismemberment ("AD & D") terms of the policy. This accidental death insurance "provides active employees added coverage for death or dismemberment from injuries caused solely by an accident." R.24, Ex.A at 8. MetLife informed Ms. Cozzie that she was not entitled to the added coverage because the death was not caused by an "accident" and because of an exclusion provision which eliminated coverage for loss of life caused by an "[i]njury that was purposely self-inflicted." *Id.* at 9.

Ms. Cozzie requested administrative review of that determination by MetLife. Upon review, MetLife affirmed its original decision. MetLife directed Ms. Cozzie's attention to the language of the plan which provides:

> [T]he insurance companies have full discretionary authority to interpret the terms of the Program and to determine eligibility for an entitlement to Program benefits.... [E]ach insurance company determines conclusively for all parties all questions arising in the administration of the Program and any decision of the insurance company is not subject to further review.

*Id.* at 20.

### B. *Decision of the District Court*

Adopting as its decision the Report and Recommendation filed by the Magistrate Judge,[2] the district court determined that the

---

**1.** At the time of Mr. Cozzie's death, Illinois law provided that a "person shall not drive or be in actual physical control of any vehicle in this State while: (1) the alcohol concentration in the person's blood or breath is 0.10 or more." 625 ILCS 5/11–501(a)(1) (West 1993). However, Illi-

nois reduced the level of presumed intoxication to 0.08% in P.A. 90–43, § 5. *See* 1997 Ill. Legis. Serv. 2037 (West).

**2.** The district court made one minor correction not at issue in this appeal.

appropriate standard of review for MetLife's decision to deny coverage for the accidental death benefits was the arbitrary and capricious standard. In deciding to employ this standard, the court first determined that the plan was an employee benefit plan governed by ERISA. It further reasoned that, if an ERISA benefit plan vests discretionary authority in a plan administrator or fiduciary to determine eligibility for benefits under the plan, review of such discretionary determinations is conducted by employing the arbitrary and capricious standard.

Reviewing the decision of the administrator under that deferential standard, the court determined that MetLife was reasonable in defining "accident" to mean "not reasonably foreseeable." It then concluded that MetLife was reasonable in its conclusion that, because death or serious injury is a reasonably foreseeable consequence of driving a car while intoxicated, Mr. Cozzie's death was not accidental. The court determined that it did not need to reach the question of whether Mr. Cozzie's death resulted from a "purposely self-inflicted" injury.

## II

## DISCUSSION

Our approach to reviewing the grant of summary judgment by the district court is well established; we review that ruling de novo and we generally examine the record and the controlling law utilizing the same standard employed by the district court. *See Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir.1993). We shall uphold the court's entry of judgment so long as "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When the material facts are not in dispute, as in this case, the " 'sole question is whether the moving party is entitled to judgment as a matter of law.' " *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997) (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)).

## A.

We first turn to whether the district court was correct in utilizing the arbitrary and capricious standard to review MetLife's decision denying Ms. Cozzie's claim for benefits under the AD & D policy. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court of the United States held that, in interpreting benefits under an ERISA plan, a de novo standard of review is appropriate unless the plan documents give "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." As we have noted previously, the extent of the deference given the administrator "determines the extent of judicial deference." *Morton v. Smith*, 91 F.3d 867, 870 (7th Cir.1996); *see also Foster McGaw Hosp. of Loyola Univ. of Chicago v. Building Material Chauffeurs Welfare Fund, Local 786*, 925 F.2d 1023, 1025 (7th Cir.), *cert. denied*, 502 U.S. 818, 112 S.Ct. 74, 116 L.Ed.2d 48 (1991). In this case, the plan explicitly states that MetLife "determines conclusively for all parties all questions arising in the administration of the Program and any decision of the insurance company is not subject to further review." R.24, Ex.A at 20. Read literally, this provision would extinguish all judicial review of refusals by MetLife, but as our case law provides, and as MetLife concedes, such an interpretation would negate the contractual nature of the agreement. It certainly was not the intent of the parties to permit the insurance company to turn down a claim for benefits on whim. *See Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1295 (7th Cir.), *cert. denied*, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993). When language granting such broad power to interpret the documents is vested in the fiduciary, we have held that the appropriate standard of review ought to be the "arbitrary and capricious" standard. *Id.*; *Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990). Review under this standard is extremely deferential and has been described as the least demanding form of judicial review. *See Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*,

102 F.3d 1435, 1438 (7th Cir.1996). It is not, however, without some teeth. *See Swaback v. American Info. Techs. Corp.,* 103 F.3d 535, 540 (7th Cir.1996) (noting the deferential standard that applies, but stating that we will not "rubber stamp" plan administrator decisions and that a decision that "controvert[s] the plain meaning of a plan" is "arbitrary and capricious"). Certainly, even under this standard, the insurance company is bound by the terms of the document. Interpretation and modification are different; the power to do the first does not imply the power to do the second.

As the Supreme Court noted in *Firestone,* although the existence of a conflict of interest on the part of the administrator does not alter the applicable standard of review, that conflict must be weighed as a factor in determining whether there has been a breach of duty even under a deferential standard. *Firestone,* 489 U.S. at 115. Here, however, we agree with the district court that Ms. Cozzie has not established that such a conflict is operative in this case. Although MetLife acts as both administrator and insurer of the plan, that factor, standing alone, does not constitute a conflict of interest. *See Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir.1995). Indeed, it has not been demonstrated that MetLife has a direct stake, in terms of its own financial health, in the outcome of this issue of interpretation. *See Cuddington v. Northern Ind. Pub. Serv. Co.,* 33 F.3d 813, 816 (7th Cir.1994) (refusing to find a conflict on a similar theory absent "specific evidence showing that the [plan administrator] had a conflict of interest"). Moreover, the plan is the product of the collective bargaining process between the insured's union and his employer. Ameritech and the union agreed to provide this insurance coverage and both parties had expectations about the administrator's performance under that agreement. MetLife therefore must, as a practical matter, interpret the plan in a manner compatible with the understanding of the parties to this collective bargaining arrangement.

In light of the broad discretion granted to MetLife by the plan to interpret its terms and the absence of any demonstrated conflict of interest, we conclude that the district court correctly utilized the arbitrary and ca-pricious standard of review in assessing the decision of the trustees to deny benefits.

### B.

We now address whether MetLife's interpretation of the policy language can be sustained under the arbitrary and capricious standard of review. The plan language at issue in this case obligates MetLife to pay accidental death benefits if a plan participant died "as a direct result of the accident and independently of all other causes." R.24, Ex.A at 9. The plan also exempts from accidental death benefit coverage a situation in which death was caused by an injury that "was purposely self-inflicted." *Id.*

In interpreting the accidental death provision, MetLife determined that accidental death benefits were not payable because Robert Cozzie did not have an "accident." In giving the language of the policy this interpretation, it chose to define the term "accident" in terms of reasonable foreseeability. In MetLife's view, it was reasonably foreseeable that Robert Cozzie, having ingested the quantity of alcohol that he did ingest, would suffer a fatal injury if he got behind the wheel of an automobile in such a state of inebriation.

We must determine whether MetLife's determination can be characterized as arbitrary and capricious. MetLife correctly noted that this standard traditionally has been treated as an especially deferential one. As we noted earlier, the judicial parlance for describing this standard employs such language as "the least demanding form of judicial review." *Trombetta,* 102 F.3d at 1438 (citing *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)). One of our cases describes the review as a determination as to whether the administrator's decisions were "downright unreasonable." *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 380 (7th Cir.1994) (internal quotation omitted). These phrases, while helpful, do not suggest an appropriate judicial methodology to follow in determining whether a particular interpretation passes muster. Nevertheless, Judge Eschbach's decision for the court in *Exbom* sheds significant light on the analytical path we must follow. *Exbom* stresses that the judicial focus ought to be on whether the decision of the fiduciary or trustee can be characterized

as a rational one. The fiduciary must "make[ ] an informed judgment" and "articulate[ ] an explanation for it that is satisfactory in light of the relevant facts, i.e., one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." *Exbom*, 900 F.2d at 1143. Writing for the court in *Chalmers*, Judge Bauer further suggested that, in addition to any possible bias on the part of the fiduciary (a factor we have already discussed), a court ought to focus on the complexity of the issues, the process of the decision-making body, the extent to which the fiduciaries utilized the services of experts as necessary, and finally the soundness of the fiduciary's ratiocination. *Chalmers*, 61 F.3d at 1344.

Some of the factors isolated in *Chalmers* are designed principally to train the judicial examination on the thoroughness with which the fiduciary has examined the factual underpinnings of the situation. In this case, there is little disagreement about the factual situation or about the opportunity of Ms. Cozzie to address MetLife concerning the factual circumstances or the reasons for its decision. Rather the real dispute between the parties centers on the last *Chalmers* factor: the soundness of MetLife's ratiocination.

█ In addressing this issue—the ratiocination of MetLife—our main focus ought to be the text of the plan. It is well established that it is the language of an ERISA plan that controls. *See Swaback*, 103 F.3d at 540 (stating ERISA's requirement that the plan be in writing, that federal common law principles apply in interpreting the plan and that extrinsic evidence should not be used when the plan language is unambiguous). This inquiry requires that we begin with the text of the plan and determine whether the administrator's approach demonstrates a reasoned train of thought, one that, in Judge Eschbach's words, "makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." *Exbom*, 900 F.2d at 1143.[3]

█ Upon examination of the plan, it becomes readily apparent that MetLife's interpretation cannot be said to contradict the plain language of the plan. The principal term—"accident"—is left undefined by the plan. Moreover, another provision in the plan specifically gives the trustees the authority to interpret its language. Therefore, the text, when read in its entirety, contemplates that MetLife will define terms—including "accident"-that are left undefined by the text. We note further that the definition given the term "accident" by MetLife is not incompatible with the interpretation that has been given that term in other insurance contexts. In *Senkier v. Hartford Life and Accident Insurance Company*, 948 F.2d 1050 (7th Cir.1991), we noted that the term "accident" is not easily susceptible to a limiting principle and therefore decided that it ought to be interpreted according to " 'common understanding as revealed in common speech.' " *Id.* at 1052 (quoting *Connelly v. Hunt Furniture Co.*, 240 N.Y. 83, 85–87, 147 N.E. 366, 367 (Cardozo, J.)). Here, MetLife interpreted the term "accident" to be an event that is not "reasonably foreseeable."[4] Our col-

---

3. Ms. Cozzie suggests that we employ a methodology of our colleagues in the Eighth Circuit. *See Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616 (8th Cir.1994). *Lutheran Medical Center* articulates five somewhat interrelated factors: whether the fiduciary's interpretation of the plan is consistent with the goals of the plan; whether the fiduciary's interpretation renders any of the plan language inconsistent or meaningless; whether the plan satisfies ERISA requirements; whether the fiduciary has interpreted the language consistently; and whether the fiduciary's interpretation is contrary to the plan language. *See id.* at 621–22. In essence, this case also counsels that we focus on the text of the plan and upon any evidence of inconsistencies or evenhandedness in its interpretation. We therefore believe that our approach is consistent with the one articulated in that case.

4. In contrast, Ms. Cozzie asserts that "accident" actually means "unintended" or perhaps "unexpected." The problem with Ms. Cozzie's definition is that it appears to rely on the insured's subjective intentions or expectations. Under her definition, any injury or death that an insured did not actually intend to incur would be accidental. However, as explained by our colleagues in the First Circuit, this definition of "accident" would subject insurers to liability for the patently unreasonable expectations of insureds. *See Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1087 (1st Cir.) (citing games of Russian roulette and a case in which a boy intentionally laid down across a highway as examples of non "accidents" that resulted from unreasonable ex-

leagues in the First Circuit, in a thoughtful survey of the difficulties encountered by modern courts in developing a limiting principle to the term "accident," have suggested that, in giving meaning to the term "accident," we first ask whether the insured believed that the conduct at issue would result in the sort of injury that was sustained. *See Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1088 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). If the insured did not believe that the result would occur, we must consider whether such an estimation can be considered reasonable. If the expectations of the insured were objectively unreasonable, then injuries or death resulting therefrom are not accidental. *Id.*

Employing this approach to defining "accident," other courts have reached the conclusion that a death that occurs as a result of driving while intoxicated, although perhaps unintentional, is not an "accident" because that result is reasonably foreseeable. *See Miller v. Auto–Alliance Int'l, Inc.,* 953 F.Supp. 172, 176 (E.D.Mich.1997) (upholding MetLife's denial of AD & D benefits because definition of "accident" used—that death or injury resulting from driving while intoxicated reasonably should have been expected— was not arbitrary and capricious); *Fowler v. Metropolitan Life Ins. Co.*, 938 F.Supp. 476, 480 (W.D.Tenn.1996) (same); *cf. McLain v. Metropolitan Life Ins. Co.*, 820 F.Supp. 169, 178 (D.N.J.1993) (upholding MetLife's denial of AD & D benefits and its definition of "accident" as not arbitrary and capricious in finding that death resulting from cocaine use was not accidental because insured reasonably should have expected death to occur). MetLife therefore can point to the fact that its interpretation does not contradict the plain wording of the policy. It also finds support, both in terms of the analytical methodology employed and the result obtained, in these other judicial decisions. We conclude that, in light of the reasoning underlying the definition, it cannot be said that MetLife's

definition of "accident" is downright unreasonable.

We also believe that MetLife's interpretation is rational because it is consistent with the goals of the plan. The purpose of this plan is to provide the families of the union membership with insurance against the tragedy of unexpected death by providing additional benefits for those who experience such a loss and all its consequent tremors. Whenever a plan fiduciary determines that benefits are not owed under particular circumstances, it does, from the perspective of the claimants in that case, frustrate the purpose of providing assistance. However, as with all insurance arrangements, the plan fiduciary or administrator must ensure that payments are reserved for those who truly fall within the terms of the policy. Otherwise, the financial health of the pooled assets is jeopardized and the cost of providing recovery for future applicants owed assistance is escalated. We cannot say, therefore, that MetLife's determination that the purposes of the plan are best served by acknowledging a qualitative difference between the ingestion of a huge quantity of alcohol and other tragedies of human life which do not involve such a significant assumption of a known risk by the insured is incompatible with the goals of the plan.

We do not mean to suggest that MetLife could sustain a determination that all deaths that are causally related to the ingestion of alcohol, even in violation of law, could reasonably be construed as not accidental. States obviously have the authority to proscribe conduct that, although not inherently dangerous, is sufficiently risky that the general security is enhanced by its proscription. The plan fiduciary cannot interpret the plan in such a way as to make the coverage meaningless. When the insured engages in conduct that results in a loss that could not have been reasonably anticipated, a rational interpretation could not deny coverage.

pectations that death or harm would not occur; even if injury was not intended, the behavior was too reckless to be called accidental in the common understanding of the term), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586

(1990); *see also Arnold v. Metropolitan Life Ins. Co.*, 970 F.2d 360, 362 (7th Cir.1992) (holding that, under Illinois law, death caused by playing Russian roulette was not accidental).

The absence of an explicit exclusion must be given significant weight in any review of the reasonableness of a decision by the fiduciary to deny coverage. ERISA requires that the plan summary's description of coverage be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Here, the plan does not specifically exclude from coverage the conduct at issue but does exclude other conduct—notably suicide, attempted suicide and purposely self-inflicted injury.[5] However, given the amount of alcohol ingested here and the exclusion of any other cause for the accident, we cannot say that it was arbitrary and capricious for MetLife to determine that this particular vehicular death was no "accident." Nevertheless, we caution that plan drafters would be well advised to demonstrate significant circumspection in attempting to require these general plan terms to bear too much weight.

### Conclusion

Given the extremely deferential standard of review that must govern our adjudication, we cannot say that MetLife, as the plan fiduciary, reached an unreasonable result on the facts of this particular case. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

**5.** The Accidental Death and Disability section of the policy, although containing specific exceptions for suicide, attempted suicide and purposely self-inflicted injury, contains no exception for alcohol or drug ingestion. Moreover, in another part of the plan, covering special accident benefits, the plan does contain a specific exception for such usage. It provides that benefits will not be available if death was caused by "[u]se of any drug, unless on the advice of a licensed medical practitioner." R.24, Ex.A at 12.